## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Donald J. Frew
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Emmett L. Waltz, III,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 17, 2017

Court of Appeals Case No.
02A03-1702-CR-263

Appeal from the Allen Superior Court

The Honorable Wendy W. Davis, Judge

Trial Court Cause No.
02D05-1609-F6-1061

**Pyle, Judge.**

# Statement of the Case

Emmett Waltz, III ("Waltz") appeals his conviction, following a jury trial, for Level 6 felony Strangulation.[1] At Waltz's jury trial, the victim—his girlfriend—recanted her original report to police that Waltz had hit her multiple times and had shoved his two fingers, up to his knuckles, into her mouth and down her throat. Waltz argues that the trial court abused its discretion in admitting a detective's testimony regarding the cycles of domestic violence and the percentage of victims who recant in domestic abuse cases. Specifically, he contends on appeal that these two portions of the detective's testimony were inadmissible under Indiana Evidence Rule 702. Waltz also contends that there was insufficient evidence to support his strangulation conviction.

We conclude that Waltz has waived his appellate challenge to the detective's testimony. Specifically, he waived his challenge to the detective's testimony regarding the cycles of violence because he failed to object based on the same grounds he now raises on appeal, and he waived his challenge to the testimony regarding the percentage of recanting victims because he failed to object to that testimony at trial. Additionally, we conclude that Waltz's sufficiency argument is merely a request to reweigh the inferences made by the jury and its

---

[1] IND. CODE § 35-42-2-9, the strangulation statute, was recently amended effective July 1, 2017. Because Waltz committed his offense in 2016, we will apply the statute in effect at that time. Waltz was also convicted of Level 6 felony domestic battery under INDIANA CODE § 35-42-2-1.3 but does not appeal that conviction.

determination of witness credibility, and we deny this request and affirm his challenged strangulation conviction.

[3] We affirm.

## Issues

1. Whether Waltz waived his appellate challenge to the admission of the police detective's testimony.
2. Whether sufficient evidence supports Waltz's Level 6 felony strangulation conviction.

## Facts

[4] In September 2016, Waltz and Melanie Bell ("Bell") had been in a relationship for two years and had a child together. Following an argument via text message, Bell took her daughter to Waltz's house so that Bell could speak with him. Bell sat her five-month-old daughter in the living room and went into the bathroom where Waltz was in the bathtub. The two argued, and Bell threw a comb or a toothbrush at him. Waltz told Bell that she "better be scared[,]" (Tr. Vol. 2 at 178), and he "grabbed her wrist and pushed it towards the side[.]" (Tr. Vol. 3 at 23). Bell then ran out of the bathroom to leave the house. Waltz caught up with Bell at the front door and again grabbed her wrist. Waltz then shoved his two fingers, up to his knuckles, into her mouth and down her throat. He also hit her in the ribs, on her arm, and on her head. Bell broke away and retreated to her car in the driveway, leaving her daughter inside the house.

[5] Waltz went to Bell's car to ask her to come back inside. Bell told Waltz to bring their daughter outside to her, and Waltz refused. Bell then called 911 and

told the operator that Waltz "was inside with [her] daughter and that he wouldn't bring her outside." (State's Ex. 1). Bell also "told them that there was some violence that had happened[.]" (Tr. Vol. 2 at 151). She told the 911 operator that she did not want to stay in the driveway because she was scared and that she was going to drive down the street and away from Waltz's house. A few minutes later, Bell again called 911 in an attempt to cancel her previous call, and the operator informed her that the police were on the way. Minutes later, the police responded and met Bell on a cross street near Waltz's home.

[6] When the police arrived, Fort Wayne Police Officer Scott Wilson ("Officer Wilson") noticed that Bell appeared "afraid" and "ha[d] been crying." (Tr. Vol. 2 at 176). Bell told Officer Wilson that, after Waltz had gotten "aggravated with her[,]" he "grabbed her[,]" "shoved his fingers down into her throat or into her mouth[,]" and asked her "how d[id] she like that or how did that feel." (Tr. Vol. 2 at 179). Bell also told the officer that Waltz had hit her ribs and head. Officer Wilson saw that Bell had a "red mark" on her arm and "some skin fluffing from the arm like an abrasion." (Tr. Vol. 2 at 180).

[7] The police told Bell to follow them back to Waltz's house so she could get her daughter. Bell was "apprehensive" and "said she was too scared to go back[.]" (Tr. Vol. 2 at 180). After Officer Wilson assured Bell that Waltz was "not going to do anything with [the police] there[,]" Bell went back to Waltz's house with the police. The police officers knocked several times on Waltz's door, but he refused to answer. The officers, who noticed that Bell was texting Waltz,

told her to tell him to come outside. Waltz then opened the door and came outside with Bell's daughter, and the police arrested Waltz.

[8] Thereafter, Bell drove to the police station to give a statement to Detective Michelle Brown ("Detective Brown"), who is a detective in the domestic violence unit. Bell told Detective Brown that Waltz had "shoved his first two fingers down her throat . . . all the way down to . . . the knuckle" and that he had "struck her on her left side in [her] ribs . . . and punched her with a closed fist on the left side of her head." (Tr. Vol. 2 at 228). While Bell was at the police station, another officer took photographs of her side and arm.

[9] The State charged Waltz with Count I, Level 6 felony strangulation; Count II, Level 6 felony domestic battery based on prior conviction for battery; and Count III, Level 6 felony domestic battery committed in the presence of a child. The trial court also issued a no-contact order between Waltz and Bell.

[10] Despite the no-contact order, Waltz called Bell multiple times while he was in jail, and all of these calls were recorded. On the day of his arrest, Waltz called Bell for the first time. During this phone call, Waltz cautioned Bell to stop making statements. He also told Bell, "when you go to court, tell them that you made it up," and he emphasized that he was "dead fucking serious" about it. (State's Ex. 9). Waltz also asked Bell why she had called the police, and she responded that she had been "scared." (State's Ex. 9). He then warned her that if "[she] d[id] this, then [she was] gonna regret it . . . regret it every time." (State's Ex. 9). Later during the phone call, Waltz questioned Bell about why

she had told the police that he had strangled her, and she responded that she had told the police that he had put his hands down her throat. Waltz told Bell that she was not helping him by saying that "stupid shit" and that she needed to "quit thinking honestly." (State's Ex. 9).

[11] Two days later, Bell wrote a letter to the trial court. In the letter, Bell stated that she "want[ed] to recant [her] statement" made to police on September 16. (App. Vol. 2 at 25). She also stated that she did not want the police to arrest Waltz and that she did not want to press any charges against him. In the letter, Bell stated that she had a mark on her arm because it had been sunburnt and was peeling. Additionally, she wrote that she "c[ould] assure that there had been no domestic violence[,]" that she did not fear Waltz, and that "no one ha[d] pressured [her] into the writing of this letter." (App. Vol. 2 at 26). On the day that Bell wrote the letter, Waltz phoned Bell from the jail. After Bell read part of the letter to Waltz, he told her that she needed to make it sound like the police had "coached [her] and like changed [her] words" and "manipulated charges that weren't fuckin' true." (State's Ex. 13). Waltz instructed Bell to make a copy of the letter for both the trial court and the prosecutor's office. Bell told Waltz that "they had nothing to build a case off of without [her] statement." (State's Ex. 9). Waltz said that the strangulation charge should get dropped because there were no photos of Bell's throat.

[12] On October 19, 2016, Waltz again called Bell from jail. During the phone call, Waltz told Bell how to avoid being served with a subpoena, such as refusing to answer the door or moving from her house and staying with her grandmother

for a month or two. Waltz told Bell that her "showing up is going to fuck everything up." (State's Ex. 14).

[13] In December 2016, the trial court held a jury trial. When the State called Bell as a witness, she admitted that she had told the police that Waltz had hit her multiple times and had shoved his fingers down her throat. She, however, recanted those prior reports to police and testified that "in all actuality it didn't happen." (Tr. Vol. 2 at 155). Instead, Bell testified that she had marks on her because she had run into the refrigerator when leaving Waltz's house and was sunburnt. She also admitted that she had written the trial court a letter in which she had stated that she did not want Bell to be arrested and did not want charges filed against him, and she testified that she had written the letter all by herself. After Bell testified that she was never scared of Waltz and continued to deny that he had shoved his fingers down her throat, the State asked her "[h]ow would someone having their fingers down your throat impact you?" (Tr. Vol. 2 at 159-60). Bell responded that "[i]t could affect your breathing or make you sick or something[.]" (Tr. Vol. 2 at 160). The State then verified that Bell had testified that "someone having their fingers down your throat . . . can impact your breathing[,]" and Bell responded, "Yes." (Tr. Vol. 2 at 160).

[14] The State introduced into evidence Bell's 911 phone calls and the jail phone calls between Waltz and Bell. The State also presented testimony from Officer Wilson and Detective Brown regarding Bell's initial statements that Waltz had hit her and shoved his fingers down her throat. During Detective Brown's direct examination, she testified that she had experience and training in

domestic violence cases and was familiar with how some domestic violence victims behave, including recanting prior statements. She then, without objection, explained the definition of recanting. Specifically, Detective Brown testified that "[r]ecanting is when a victim will formally take back what they [sic] had initially reported and said." (Tr. Vol. 2 at 223). When the State asked the detective to talk about the cycles of violence, Waltz objected to the testimony based on relevancy. The trial court overruled the objection, and Detective Brown then testified about the three cycles of violence. The State then asked Detective Brown about the percentage of victims who had recanted in her cases, and the detective testified—without objection—that "about 80 to 90 percent will go back and say it never happened." (Tr. Vol. 2 at 225).

[15] Waltz testified at trial on his own behalf. He admitted that he had argued with Bell and that he had grabbed Bell's wrist in the bathroom and in the living room as she was running out of the house. He, however, denied that he had hit her. During closing argument, his counsel argued that Waltz had grabbed Bell's wrist out of self-defense, and the trial court granted his request to include a self-defense instruction.

[16] The jury returned a verdict of guilty on Count I, Level 6 felony strangulation and Count II, Level 6 felony domestic battery, and it found Waltz not guilty of Count III, Level 6 felony domestic battery. The trial court sentenced Waltz to two (2) years' imprisonment for both Count I and Count II and ordered that these sentences be served concurrently. Waltz now appeals.

# Decision

[17] Waltz argues that: (1) the trial court abused its discretion in admitting Detective Brown's testimony, and (2) there was not sufficient evidence to support his Level 6 felony strangulation conviction. We will address each of these arguments in turn.

## 1. Admission of Evidence

[18] Waltz argues that the trial court abused its discretion in admitting Detective Brown's testimony regarding the cycles of violence and the percentage of victims who recant. He contends that these two portions of testimony were inadmissible under Indiana Evidence Rule 702(a).

[19] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[20] "A claim of evidentiary error may not be raised for the first time on appeal but rather must first be presented at trial[.]" *Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017), *trans. denied*. "The failure to make a contemporaneous objection to the admission of evidence at trial, so as to provide the trial court an opportunity to make a final ruling on the matter in the context in which the evidence is introduced, results in waiver of the error on appeal." *Brown v. State*,

783 N.E.2d 1121, 1125 (Ind. 2003). Additionally, "[a]ny grounds for objections not raised at trial are not available on appeal, and a party may not add to or change his grounds in the reviewing court." *Hunter*, 72 N.E.3d at 932.

Here, Waltz has waived his appellate challenge to the two portions of Detective Brown's testimony. First, Waltz has waived his challenge to the detective's testimony regarding the cycles of violence because his objection was based only on the relevance of this testimony and not based on Indiana Evidence Rule 702, which he now attempts to raise on appeal. Because he objected based on a ground other than he now attempts to raise on appeal, he has waived review of his appellate argument regarding this testimony. *See, e.g.*, *Brown*, 783 N.E.2d at 1125-26 (holding that the defendant had waived his argument regarding the admission of evidence where his objection at trial was based on grounds different than those on appeal). Second, in regard to Waltz's challenge to the detective's testimony about the percentage of victims who recant, Waltz failed to raise an objection, let alone a contemporaneous objection, to this testimony. As a result, he has waived his appellate argument regarding this testimony. *See, e.g.*, *Moore v. State*, 669 N.E.2d 733, 742 (Ind. 1996) (explaining that a defendant waives a claim on appeal when he does not object to the introduction of evidence, makes only a general objection, or objects only on other grounds), *reh'g denied*.[2]

---

[2] We recognize that "[a] claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Brown*, 929 N.E.2d at 207. *See also Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) ("Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission

## 2. Insufficient Evidence

[22]    Waltz also argues that the evidence was insufficient to support his conviction for Level 6 felony strangulation.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder would find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

[23]    The strangulation statute in effect at the time of Waltz's crime, INDIANA CODE § 35-42-2-9, provided, in relevant part, that "[a] person who, in a rude, angry, or insolent manner, knowingly or intentionally . . . obstructs the nose or mouth of . . . another person . . . in a manner that impedes the normal breathing or the blood circulation of the other person commits strangulation, a Level 6 felony."

---

constitutes fundamental error."). Here, however, Waltz does not raise a fundamental error claim on appeal. Therefore, we will not address it.

I.C. § 35-42-2-9(b)(2). To convict Waltz as charged, the State was required to prove beyond a reasonable doubt that Waltz knowingly or intentionally obstructed Bell's nose or mouth in a manner that impeded her normal breathing or blood circulation.

[24] Waltz contends that there was insufficient evidence to support his strangulation conviction because the State did not provide direct testimony that Bell's normal breathing was impeded. In support, he points to Bell's testimony at trial that she had lied to the officers about Waltz putting his fingers down her throat and then claimed that her breathing was, therefore, not affected. The State, on the other hand, argues that the probative evidence presented and the reasonable inferences drawn therefrom were sufficient to allow the jury to find that Bell's breathing was impeded. We agree.

[25] "Triers-of-fact are charged with making common sense inferences" regarding evidence presented. *Davis v. State*, 796 N.E.2d 798, 806 (Ind. Ct. App. 2003), *trans. denied*. Indeed, we will determine that "evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Drane*, 867 N.E.2d at 147.

[26] Here, despite Bell's recantation, the jury heard testimony from police officers that Waltz had shoved his two fingers, up to his knuckles, into Bell's mouth and down her throat. Specifically, Bell told Officer Wilson that, after Waltz had gotten "aggravated with her[,]" he "grabbed her[,]" "shoved his fingers down into her throat or into her mouth[,]" and asked her "how d[id] she like that or

how did that feel." (Tr. Vol. 2 at 179). Bell told Detective Brown that Waltz had "shoved his first two fingers down her throat . . . all the way down to . . . the knuckle[.]" (Tr. Vol. 2 at 228). From this evidence, the jury could have reasonably inferred that Bell's breathing was impeded. *See, e.g.*, *Saxton v. State*, 790 N.E.2d 98, 99 (Ind. 2003) (explaining that the trier-of-fact could infer from evidence that defendant was standing on air conditioning unit at 5 a.m. peering into woman's bathroom window that defendant did so without woman's permission). Indeed, even Bell acknowledged that the impact of someone placing his fingers down her throat was that "[i]t could affect your breathing or make you sick or something[.]" (Tr. Vol. 2 at 160).

[27] Based on the jury's verdict, it is evident that it did not believe Bell's testimony that Waltz had never put his fingers down her throat or that her breathing had not been affected. "The factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, and is not required to believe a witness' testimony even when it is uncontradicted." *Wood v. State*, 999 N.E.2d 1054, 1064 (Ind. Ct. App. 2013) (internal citations omitted), *trans. denied*, *cert. denied*. The evidence presented at trial and the inferences drawn therefrom were sufficient for a reasonable jury to conclude that Waltz impeded Bell's breathing when he shoved his fingers down her throat. Waltz's challenge to the State's evidence is merely a request to reweigh the inferences made by the jury and its determination of witness credibility. We deny this request and affirm his Level 6 felony strangulation conviction. *See Ferrell v. State*, 746 N.E.2d 48, 50 (Ind. 2001) (explaining that "we look to the

evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt").

[28] Affirmed.

May, J., and Brown, J., concur.